**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

PETER HORNICK, an individual,

      Plaintiff-Appellee/
      Cross-Appellant,

v.

GARY BOYCE; JOANNE BOYCE,
individuals,

      Defendants-Appellants/
      Cross-Appellees.

Nos. 07-1040 & 07-1041
(D.C. No. 1:03-CV-02504-REB-CBS)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **EBEL**, and **MURPHY**, Circuit Judges.

---

In this diversity action brought under Colorado law, defendants Gary and

JoAnne Boyce appeal the district court's award of $1.5 million in general

damages to plaintiff Peter Hornick based on its finding, following a bench trial,

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

that the Boyces breached their contractual obligation to sell their fifty-percent ownership interest in a Colorado limited liability company to Hornick for $500,000.  Hornick has cross-appealed, arguing that the district court should have awarded him $3.5 million in damages due to the Boyces' post-breach misconduct in unilaterally conveying title to the company's sole asset to themselves pursuant to a separate buy-sell provision in the company's operating agreement. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reject the arguments asserted by Hornick in his cross-appeal, and affirm the judgment entered by the district court in favor of Hornick for general damages in the amount of $1.5 million.

## I.  Background

As a starting point, we note that this appeal concerns: (1) the "Amended Findings of Fact, Conclusions of Law, and Orders" (Amended Order) that the district court entered on January 2, 2007, *see Hornick v. Boyce*, No. 03-CV-02504-REB-CBS, 2007 WL 8392 (D. Colo. Jan. 2, 2007); and (2) the "Amended Judgment" entered by the district court on October 19, 2007, *see* R., Doc. 198.  In the Amended Order, the Honorable Robert E. Blackburn made extremely thorough and detailed findings of fact and conclusions of law, and we commend Judge Blackburn for his conscientious and excellent work in this complicated case.  For our purposes, the following background facts are pertinent to this appeal.

This case involves an option to purchase a membership interest in a Colorado limited liability company. The company is known as the Villa Grove Ranch Co., LLC (Villa Grove), and its sole asset is a 5,000 acre ranch located in Colorado's San Luis Valley. The ranch is known as the Villa Grove Ranch (the Ranch), and it consists of three separate ranches: the Nye, the Barsch-Miller, and the Round Hill.

Plaintiff Peter Hornick owns fifty percent of Villa Grove and defendants Gary and Joanne Boyce own the other fifty percent. Hornick is a real estate and finance investor who resides in the State of New York, and he contributed $375,000 towards the $750,000 purchase price for the Ranch. The Boyces contributed the other $375,000. Gary Boyce was born in the San Luis Valley, and he has ranched there for a number of years. In accordance with the terms of Villa Grove's operating agreement, Gary Boyce was appointed manager of Villa Grove. As manager, Gary Boyce was in charge of the day-to-day operations of Villa Grove and the Ranch, and, as the district court found, Hornick "had virtually no involvement in the management and operation of Villa Grove." *Hornick*, 2007 WL 8392, at *2. Although Hornick has experience investing in real estate ventures in different parts of the United States, except for the venture at issue here, he has no experience in the ranching business. However, he has visited the Ranch, and he has also been involved in extensive efforts with Gary Boyce and others to acquire and develop water rights in the San Luis Valley.

-3-

In October 2000, Hornick and the Boyces executed an option agreement granting Hornick an exclusive, one-year option to purchase the Boyces' fifty-percent ownership interest in Villa Grove for $500,000. The parties understood that this price was well below the Ranch's fair market value. The Boyces agreed to sell their half-interest in Villa Grove to Hornick for this reduced price in exchange for his cooperation with regard to other business matters that the parties were involved in.

Hornick subsequently exercised his rights under the option agreement in October 2001, and his purchase of the Boyces' fifty-percent interest in Villa Grove was scheduled to close in December 2001. The deal fell through, however, and Hornick subsequently filed this diversity action against the Boyces for breach of contract. As relief, Hornick sought specific performance or, in the alternative, compensatory benefit-of-the-bargain damages. After conducting a two-day bench trial, the district court, applying Colorado law, found that the Boyces had indeed breached the option agreement, but the court declined to order specific performance. Instead, in the Amended Order, the court awarded Hornick $1.5 million in general damages. The court arrived at this figure based on Hornick's uncontroverted trial testimony that the Ranch had a fair market value of $4 million in December 2001. The court then divided the $4 million in half to reflect the parties' fifty-percent ownership interests and an additional $500,000 was deducted based on the option agreement's purchase price.

In the Amended Order, the district court rejected the Boyces' post-judgment arguments challenging Hornick's opinion regarding the fair market value of the Ranch, which they asserted for the first time in a motion to alter or amend findings under Fed. R. Civ. P. 52(b). Specifically, the court rejected the Boyces' contention that there was insufficient evidence to support the court's damages award because: (1) Hornick was not qualified under Colorado law to testify as an "owner" of the Ranch; and (2) his testimony regarding the value of the Ranch was unsupported and based on speculation. As the court explained:

> As a co-owner of Villa Grove, the value of which was tied inextricably to the value of the ranch real property it owned, Hornick cogently and reasonably valued Villa Grove at approximately $4,000,000. Hornick was reasonably familiar with the relevant real estate market. Hornick consulted two local real estate brokers in the valley and checked values of comparable properties in ranch magazines. After calling around to get a sense of what property values were, he valued Villa Grove's three ranches as follow[s]: the Round Hill ranch at approximately $1,000 per acre; the Nye ranch at approximately $1,200 per acre; and the Barsch-Miller ranch at approximately $500-600 per acre, for an average of approximately $800 per acre. Hornick's valuation was corroborated by his discussions some years later with Boyce, who attempted to persuade Hornick to accept a proposal that would net the parties more than four million for the Villa Grove ranches. Thus, Hornick stood to make a net profit of approximately $1,500,000 on his purchase of [the] Boyces' one-half interest in Villa Grove.

> . . . .

> In a breach of contract action, a plaintiff may recover the amount of damages that are required to place him in the same position he would have occupied had the breach not occurred. *Schneiker v. Gordon*, 732 P.2d 603, 612 (Colo. 1987); *Taylor v. Colorado State Bank of Denver*, 440 P.2d 772, 774 (1968). Thus, Hornick is entitled to the

-5-

benefit of his bargain vis-a-vis the Hornick-Boyce Option Agreement. . . . On that basis, I have calculated Hornick's general or actual damages as a matter of fact to be $1,500,000. . . .

My finding of entity-asset valuation, and, thus, general damages, was based primarily on Hornick's credible and informed testimony as a co-owner, which was competent, probative, and substantial and supported by an objective, evidentiary basis. Importantly, defendants did not object to his testimony on any grounds - competence, relevance, or otherwise. Hornick's testimony, which was based on his experience, research, and reflection, provided me with a reasonable basis by which to compute damages with a reasonable degree of certainty.

*Hornick*, 2007 WL 8392, at *3, *11 (footnotes omitted).

## II. Analysis

In this appeal, the Boyces are challenging only the district court's $1.5 million damages award, and they do not contend that the district court erred in finding that they breached the option agreement. Relying on Colorado law, the Boyces argue that the district court's damages award was clearly erroneous and not supported by substantial and competent evidence because: (1) Hornick was not qualified to express an opinion as to the value of the Ranch because he was not an "owner" of the Ranch, but was instead merely a passive investor in the entity that owned the Ranch; and (2) even if he was qualified to give an opinion as to the value of the Ranch as an owner, Hornick's testimony was inadmissible speculation and conjecture and lacked an adequate factual foundation because it was based solely on vague references to conversations with two local real estate brokers and on a review of unspecified ranch magazines. The Boyces therefore

-6-

argue that this court should vacate the $1.5 million damages award and remand this matter to the district court with instructions for the court to enter a new judgment awarding Hornick only nominal damages in the amount of one dollar.

Although the Boyces' legal arguments have some facial appeal, we will not allow them to unjustly benefit from their unchallenged misconduct in breaching the parties' option agreement. Most importantly, the Boyces did not contemporaneously object to Hornick's trial testimony regarding his opinion of the fair market value of the Ranch.[1] Accordingly, given the lack of any contemporaneous objection, we have reviewed the district court's damages award only for plain error, *see* Fed. R. Evid. 103(a)(1) and (d), and we see no plain error here. *See United States v. Munoz-Nava*, 524 F.3d 1137, 1147 (10th Cir. 2008) ("Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.") (quotation omitted); *see also Employer's Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 769-770 (10th Cir. 2004) (noting that the discretionary standard for plain error applied in criminal cases, as construed by the Supreme Court in *United States v. Olano*, 507 U.S. 725

---

[1]    We also note that the Boyces failed to cross-examine Hornick regarding the basis for his opinion regarding the fair market value of the Ranch, and they did not offer any counter evidence regarding the value of the Ranch in December 2001. In fact, the question of damages was not even mentioned in their counsel's closing argument.

(1993), also governs in civil cases, and that this standard requires a party to show a "miscarriage of justice," which is "an extraordinary, nearly insurmountable burden") (quotations omitted).

As a starting point, we reject the argument advanced by the Boyces' in their supplemental brief to the effect that the district court committed plain error in admitting Hornick's value opinion because Hornick was required to base his opinion on personal or first-hand knowledge since he was giving lay opinion testimony under Fed. R. Evid. 701. To the contrary, under the Federal Rules of Evidence, when a purported owner of property is testifying as to the value of the property, his testimony qualifies as expert witness testimony under Fed. R. Evid. 702 and he "is entitled to the privileges of a testifying expert." *See United States v. 10,031.98 Acres of Land*, 850 F.2d 634, 636-37 (10th Cir. 1988) (citing *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 434 n.4 (5th Cir. 1982); *United States v. Laughlin*, 804 F.2d 1336, 1341 (5th Cir. 1986) (owner's testimony is expert opinion under Fed. R. Evid. 702); *Robinson v. Watts Detective Agency, Inc.*, 685 F.2d 729, 739 (1st Cir. 1982) (owner allowed to give estimate of property value based in part on hearsay); *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 699 (5th Cir. 1975) (quoting Fed. R. Evid. 702); Fed. R. Evid. 702 advisory committee's note ("[W]ithin the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or *landowners*

*testifying to land values*.") (emphasis added)); *see also* 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6265 at 246 (1997) ("Assuming a witness's background qualifies that witness as an expert, the witness is competent to testify as an expert; there is no additional requirement that the witness have personal knowledge of facts at issue."). Thus, Hornick was permitted to base his value opinion on the second-hand information that he obtained from two real estate brokers in the San Luis Valley and his review of ranch magazines. *See* Aplt. App., Vol. 1 at 111 (Hornick's direct testimony to effect that he "had discussions with two brokers in the valley" who were his "largest source of information" and "checked ranch magazines and things to see what things were selling for").

Next, we note that, while the questions of whether Hornick was qualified as an owner and had a sufficient factual foundation to support his value opinion are ultimately substantive issues governed by Colorado law,[2] they were also threshold evidentiary issues concerning the admissibility of his expert opinion. As a result, under federal procedural law as set forth in the Federal Rules of Evidence, the Boyces were required to comply with the contemporaneous objection rule

---

[2]    *See* Fed. R. Evid. 601 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.").

embodied in Fed. R. Evid. 103(a)(1), and we will not permit them to sidestep that long-standing procedural rule by framing their arguments as a substantive state-law sufficiency of the evidence challenge.[3] *See Quinton v. Farmland Indus., Inc.*, 928 F.2d 335, 336-37 (10th Cir. 1991) (recognizing, in diversity case involving state-law product liability claim, that party may challenge admissibility of expert witness's opinion based on lack of qualifications and/or supporting factual foundation, and reviewing foundational challenge only for plain error where party failed to make contemporaneous foundational objection to expert's opinion during trial); *United States v. Markum*, 4 F.3d 891, 896 (10th Cir. 1993) ("Because Markum did not object to Chief Pearson's qualifications as an arson expert, review on that question is for plain error only."); *United States v. Hill*, 60 F.3d 672, 675 (10th Cir. 1995) (holding that, absent contemporaneous

---

[3]     Although the Federal Rules of Evidence expressly provide for the application of state law in certain circumstances, *see* Fed. R. Evid. 302 (presumptions); *id.* 501 (privileges); *id.* 601 (competency of witnesses), we have unequivocally held that "[t]he Federal Rules of Evidence are an act of Congress and, thus, subject neither to the dictates of the *Erie* doctrine nor to the Rules Enabling Act or Rules of Decision Act." *Sims v. Great American Life Ins. Co.*, 469 F.3d 870, 883 (10th Cir. 2006).  As a result, while they may impact a federal appellate court's plain error review, the contemporaneous objection rule embodied in Fed. R. Evid. 103(a)(1) is not limited in any way by state-law substantive standards.  For this reason, the Boyces' reliance on the Colorado Court of Appeals' decision in *Realty Loans, Inc. v. McCoy*, 523 P.2d 476 (Colo. App. 1974) is misplaced.  *See id.* at 478-79 (holding that any value placed on a piece of real property based solely on an unaccepted offer of purchase was incompetent under Colorado law to prove market value, "even though evidence of the offer was admitted without objection").

objection to admission of testimony at trial, appellate court reviews admission of testimony only for plain error) (citing Fed. R. Evid. 103(a) and (d)); *see also Dixon v. Crete Medical Clinic, P.C.*, 498 F.3d 837, 849-50 (8th Cir. 2007) (reviewing alleged error in admission of expert testimony during bench trial in civil case for plain error where plaintiffs failed to contemporaneously object to the admission of the testimony, and finding no plain error because "holding Plaintiffs accountable for their decision not to object to the testimony would neither prejudice their substantial rights nor 'seriously affect the fairness, integrity or public reputation of judicial proceedings'") (quoting *Olano*, 507 U.S. at 736).

Applying the plain error standard of review, we note that there are no relevant decisions of the Colorado Supreme Court or Court of Appeals indicating how those courts would resolve the substantive issue of whether a fifty-percent owner/passive investor of a closely-held business entity can give an opinion regarding the value of assets owned by the entity.[4]  Consequently, this is an unsettled question under Colorado law, and the Boyces have therefore failed to

---

[4]     The only Colorado case that has addressed the value-opinion issue in the context of a business-entity situation is *Denver Urban Renewal Auth. v. Berglund-Cherne Co.*, 568 P.2d 478, 483 (Colo. 1977) (en banc) (holding that a person who was an officer and majority stockholder of a corporation was qualified to express an opinion as to the value of the corporation's property). However, *Burglund-Cherne* does not provide any sort of settled rule for purposes of this case.

-11-

show any plain error with regard to the ownership-qualification issue. *See United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir. 2000) ("[A]n error that is plain is one that is clear and obvious. An error is clear and obvious when it is contrary to well-settled law."). In addition, concerning the question of whether Hornick's value opinion was supported by an adequate factual foundation, there is no indication in his trial testimony that Hornick relied on any "improper considerations" under Colorado law, such as offers to purchase or non-comparable replacement property costs. *See Denver Urban Renewal Auth. v. Hayutin*, 583 P.2d 296, 299-300 (Colo. App. 1978) (stating that "an owner's opinion is not admissible where it is based upon improper considerations" such as offering prices for comparable property or price paid for non-comparable replacement property). Instead, it appears from his testimony that he relied on comparable sales information, and, if the Boyces believed that he was not relying on such information, they should have established that fact via cross-examination, which they failed to do. Thus, we likewise find no plain error with regard to the factual-foundation issue.

Further, even if the Boyces had a conceivable basis for arguing that a plain error occurred in admitting Hornick's testimony, they have not met their "burden as to the fourth prong of the plain error test. A party who fails to raise an argument in the district court must demonstrate that permitting the error to stand would be particularly egregious and constitute a miscarriage of justice."

-12-

*Munoz-Nava*, 524 F.3d at 1147. Under the circumstances of this case, the only miscarriage of justice that seems possible would be for us to vacate the award of $1.5 million in general damages in favor of Hornick and instead award him only nominal damages. Legal nuances and niceties aside, given the unchallenged breach of contract by the Boyces, that result would be unpalatable.[5]

Finally, we reject the arguments advanced by Hornick in his cross-appeal. The parties' dispute regarding the buy-sell provision in the operating agreement and the Boyces' conveyance of full title to the Ranch to themselves in 2005 is totally separate from the breach of contract dispute at issue in this case, and Hornick never amended his claims in this case to include that dispute. In addition, as noted by the district court, the buy-sell dispute is the subject of ongoing state-court litigation involving these same parties. *See Hornick*, 2007 WL 8392, at *7 (noting that $1,125,000 in "payment funds are held now in case number 05 CV 53 pending in the District Court of Saguache County, Colorado, in which Hornick and Boyces are co-defendants, but opposing parties"). Simply put, as Hornick implicitly acknowledged in his supplemental brief, this case involves "only the dispute as to the exercise of the option agreement," and we will

---

[5]     Because the Boyces have failed to show that the district court plainly erred in admitting Hornick's value opinion, we also conclude that the district court's damages award was based on sufficient and competent evidence (*i.e.*, a qualified expert opinion based on an adequate factual foundation).

therefore "leave[] the rest of the dispute to be resolved at a future trial in State Court."  Aplee. Supp. Br. at 17.

The Amended Judgment entered by the district court on October 19, 2007, is **AFFIRMED**.

Entered for the Court

David M. Ebel
Circuit Judge